## SARAH HILL *v.* JAMES WHITE.

Plaintiff sent her slave from Tennessee to defendant, at New Orleans, for sale. The slave was permitted to go, with one belonging to defendant—which he kept for such purposes—to the steamboat for his clothes, whence he escaped, and plaintiff sought to make defendant liable.

*By the Court:* The defendant took the slave for sale upon commission; the contract was a mandate mutually beneficial to the parties, and the defendant was bound to the exercise of ordinary diligence—that is, such a degree of diligence as persons of common prudence are accustomed to use in their own affairs of a similar nature.

There was in the knowledge of plaintiff's agent, who brought the slave to New Orleans, facts which showed that more than ordinary diligence would be requisite to prevent the slave's escape; and these facts being withheld from defendant, he cannot be made liable.

APPEAL from the Second District Court of New Orleans, *Morgan,* J. *Taylor,* for plaintiff.  *Rozier,* for defendant and appellant.

SPOFFORD, J.   The plaintiff, residing in Nashville, Tennessee, through her agents consigned to the defendant, a dealer in slaves in New Orleans, a bright mulatto boy for sale.

After the arrival of the boy at the slave depot, he informed the defendant that he had forgotten his clothes, and left them on board the steamboat which brought him to New Orleans from Nashville.   He asked leave to go to the boat for them, and the defendant sent him, accompanied by one of his own slaves, a boy whom he kept for such purposes, and whose fidelity is not brought in question.

The plaintiff's boy went on board, and thence made his escape.   Notwithstanding the efforts of both parties, he has not been discovered to this day.

The plaintiff had judgment against the defendant for his value, and the latter has appealed.

As the defendant took the slave to sell for the plaintiff upon commission, the

contract was a mandate mutually beneficial to the parties, and the defendant was bound to the exercise of ordinary diligence—that is, such a degree of diligence as persons of common prudence are accustomed to use in their own affairs of a similar nature.   Story's Agency, § 183 ; Bailments, §§ 23, 455.

If there was anything within the knowledge of the plaintiff or her agents, who brought the boy to New Orleans, which would show that more than an ordinary degree of diligence would be requisite to prevent an escape, they were bound to declare it to the defendant.

We find that there was such knowledge on the part of the agent who wrote the letter of instructions which was to control the defendant in the sale of the slave, and that this knowledge was withheld from the defendant.

The plaintiff had owned the slave but about a month before she sent him to New Orleans for sale.   The only positive proof concerning his character relates to that month.   There is a hearsay declaration of his former owner, which cannot amount to proof of character anterior to that time.   Now, the plaintiff's agent, who accompanied the slave as far as Vicksburg, on the trip to New Orleans, was in constant apprehension that the boy would run away from the boat ; he kept the most scrupulous watch of him ; when he left the boat at Vicksburg, he practiced a deceit upon him to entice him to New Orleans ; he pretended to have hired him on the boat as a cabin-boy, and the deceit was carried out until he was landed at the slave mart.   The discovery of this trick was at once calculated to excite an apprehension of some impending evil, to be evaded by flight· The practice of the deceit conclusively proves that the plaintiff's agent thought that something of the kind was necessary to prevent the slave from running away.

Now, nothing of this was communicated to the defendant.   On the contrary, a letter was placed in his hands, written on board the steamboat by this agent of the plaintiff, authorizing him to sell, with full warranty, representing the boy as honest, humble and obedient; as having been raised on a plantation, being a good ploughman, &c.   Not one intimation was given that he was brought to New Orleans by deluding him, or that he would be likely to avail himself of any opportunity to escape.

The District Judge inferred that the defendant did not consider it safe to trust the boy, because he sent his own slave with him to the boat for his clothes. We cannot regard this as an indication that the defendant had any fear of the boy's flight.   It was an exercise of ordinary prudence, because the plaintiff's slave was a stranger in the city.   It was proper enough that he should be sent to identify his clothes; and as the defendant had not been put on his guard by the plaintiff's agent, who knew material facts which he did not disclose, we cannot agree with the District Judge in holding that there was a lack of ordinary care on the part of the mandatary, under the circumstances above detailed.

It is, therefore, ordered that the judgment of the district court be avoided and reversed, and that there be judgment for the defendant, with costs in both courts.